UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RUTH ANN BUCK, M.D.,

      *Petitioner*,

v.

UNITED STATES OF AMERICA,

      *Respondent.*

_____/

CRIMINAL CASE NO. 10-CR-20350
CIVIL CASE NO. 13-CV-12971

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Doc. 76)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion to vacate be **DENIED**.

## II. REPORT

### A. Introduction

Pending, pursuant to an order of reference from United States District Judge Thomas L. Ludington, is the above-entitled motion, which was filed pursuant to 28 U.S.C. § 2255, to vacate the federal custodial sentence of Ruth Ann Buck ("Buck"). The Court has not ordered the government to respond because it finds, for the reasons explained below, that Buck's motion does not set forth grounds necessitating responsive arguments. Therefore, pursuant to E.D. Mich. LR 7.1(f)(2), the motion is ready for Report and Recommendation without oral argument.

**B.    Background**

Buck, who was a medical doctor at the time she was indicted, was charged in a thirty two-count indictment with distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.)

On January 19, 2012, Buck pleaded guilty to the second count of the indictment pursuant to a Rule 11 plea agreement. (Doc. 68.) After considering the 18 U.S.C. § 3553 factors, the Court sentenced Buck to a term of imprisonment of 36 months, which was below the applicable guideline range of 46-57 months. (Doc. 68 at 3.) On June 18, 2012, judgment was entered and Buck was committed to the Bureau of Prisons. (Doc. 75.)

Buck did not appeal her conviction or sentence. (Doc. 76 at 3-4.) Buck filed the instant motion to vacate her sentence on July 9, 2013. (Doc. 76.) In the motion, she contends that counsel was ineffective because, during pre-trial proceedings, he: (1) failed to properly investigate the charges that Buck was indicted on; (2) failed to file any meaningful motions for discovery after Buck advised him of the true facts that would have provided Buck with a solid defense of the charges in the indictment; (3) failed to  to file a motion to discover the identity of the undercover agent (CI) that was working in Buck's office; (4) failed to investigate the fact that Buck had personally contacted two federal agencies with information about her Script Pads having been stolen from her office before the federal investigation began; (5) failed to investigate the fact that the person who photo-shopped Buck's signature had been forced to do it, information that was given to Buck by that person; and (6) failed to file a motion to withdraw as counsel based on a conflict of interest. (Doc. 76 at 4.) Buck also argues that counsel was ineffective during the plea negotiation process because he: (1) advised Buck to accept the government's plea agreement

without having interviewed any of Buck's possible witnesses or the government witnesses; (2) never discussed with Buck what she would be exposed to if she went to a jury trial and lost prior to her entering the government's Rule 11 Plea Agreement hearing; and (3) never challenged or filed a Motion to Dismiss Bucks case because the Sentencing Judge was involved in Buck's plea negotiations. (Doc. 76 at 5.)

    **C.    Analysis and Conclusions**

    **1.    Waiver**

I suggest that Buck waived his right to challenge the instant sentence. The appellate waiver in Buck's Rule 11 plea agreement states as follows:

> If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, defendant waives the right to appeal his/her conviction on any grounds . . . . Defendant understands that defendants generally have the right to attack their convictions and sentences by filing post-conviction motions, petitions, or independent civil actions. As part of this agreement, however, defendant knowingly and voluntarily waives that right and agrees not to contest his/her conviction or sentence in any post-conviction proceeding, including – but not limited to – any proceeding under 28 U.S.C. § 2255.

(Doc. 68 at 6.)

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)); *accord United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). Therefore, the Sixth Circuit has "held that a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001) ("plea agreement waivers of § 2255 rights are generally enforceable"). However, "in cases where a defendant argues that his plea was

3

not knowing or voluntary, or was the product of ineffective assistance of counsel under *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or collateral attack when the substance of his claim challenges the very validity of the waiver itself." *Acosta*, 480 F.3d at 422. Nevertheless, "[e]nforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012). Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the appellate waiver will be enforced. *Id.*

Here, Buck does not argue that her plea was not knowing and voluntary and the record reveals that it was both knowing and voluntary. The court properly questioned Buck regarding her understanding of the rights given up by pleading guilty, her ability to knowingly enter a plea, the court assured the voluntariness of her decision, and also asked the government to expressly state the terms of the Rule 11 plea agreement, including the agreed-upon sentencing guideline range of 46-57 months and the appellate waiver. (Doc. 70 at 13-24.) The court also specifically questioned Buck whether she had been given an opportunity to discuss the decision whether to enter into the Rule 11 agreement versus a trial and Buck responded, "[w]e've had a lot of discussions, the pros and cons and things of that nature." (Doc. 70 at 8-9.) The court also expressly asked Buck whether she had a chance to speak with her attorney "about what the sentence might be that could be imposed as a result of the government fully satisfying a jury that you should be sentenced as charged" and whether "you've decided that there is some benefit to you entering into the Rule 11 agreement" and she responded, "Yes." (Doc. 70 at 9.) In addition, the court specifically went over

4

whether Buck was "comfortable" with the "only issue that is identified as the factual basis for your plea in the plea agreement and that is the date of June 11th of 2009" and which involved the "undercover officer." (Doc. 70 at 29-30.) Buck responded that "most of my patients don't come in and lie to me" but also indicated that she did write a prescription for Oxycontin for the undercover officer whose "quote unquote name was Sammy Woods."(Doc. 70 at 30-31.) In addition, when asked about the underlying relevant conduct used to calculate the guideline range, Buck indicated that she "agree[d] to all those[.]" (Doc. 70 at 32-33.)

I therefore suggest that since the plea was knowing and voluntary, the appellate waiver, which included a waiver of collateral attacks such as the instant § 2255 motion to vacate, should be enforced. I therefore suggest that the motion to vacate be denied.

**2.   Assistance of Counsel**

Alternatively, I suggest that counsel was not ineffective. I first suggest that these assertions are different from asserting that the plea "was the product of ineffective assistance of counsel" such that the court should inquire into the effectiveness of counsel before enforcing the appellate waiver. *Acosta*, 480 F.3d at 422; *United States v. Coleman*, No. 07-185-JBC-JGW-2 (crim) & No. 09-7091 (civ), 2010 WL 5173205, at *2 (E.D. Ky. June 7, 2010) (relief should be barred where the plea agreement was entered into knowingly and voluntarily because, "[h]aving received the benefit of his agreement, and having entered into his agreement knowingly and voluntarily, the defendant should not now be permitted to violate that same agreement."). I therefore suggest that Buck has not asserted any claim of ineffective assistance of counsel that would entitle him to avoid the knowing and voluntary appellate waiver discussed above.

5

### a.     Standards

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-pronged test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

    **b.    Application**

I suggest that there is no merit to Buck's challenges. First, as to Buck's contention that counsel was ineffective for failing to undertake the investigations suggested (Doc. 76 at 4) I suggest that, as discussed above, the plea transcript indicates that even according to Buck herself, counsel did discuss and advise Buck regarding the plea agreement and the potential consequences of going to trial. (Doc. 70 at 9, 29-33; Doc. 76 at 5.) I further note that counsel zealously filed many pretrial motions, including a motion to modify conditions of pretrial release (Doc. 9,) a motion to dismiss the indictment for vagueness (Doc. 14,) a motion to strike surplusage from the indictment (Doc. 18,) a motion in limine to disallow proposed testimony of government expert witness Gene Mitchell, M.D. (Doc. 37,) a motion for release from custody (Doc. 46,) a motion for return of property (Doc. 52,) a motion for order to move out of state (Doc. 58,) and a motion to modify conditions of pretrial release. (Doc. 61.) I further suggest that Buck's conclusory allegation

that counsel had a conflict of interest is insufficient to contradict the zealous and competent representation evidenced by the record.

As to Buck's argument that counsel should have filed a motion to dismiss because the Sentencing Judge was involved in Buck's plea negotiations (Doc. 76 at 5,) I suggest that this claim also lacks merit. Buck does not indicate *how* the judge allegedly participated in the plea negotiation process but instead simply states the conclusion that he did. I suggest that this conclusory allegation is insufficient and is belied by the record. Even if it were somehow supported, I further suggest that any participation would be, at most, harmless error. *United States v. Davila*, ___ U.S. ___, 133 S. Ct. 2139, ___ L. Ed. 2d ___ (June 13, 2013)(holding that improper participation by the trial court in plea discussions under Rule 11(c)(1) does not require automatic vacatur of the guilty plea but instead should be subject to harmless error analysis).

Since Buck has not averred sufficient allegations that counsel was deficient or that the result of the proceeding is unreliable, *see Strickland, supra*, I suggest that Buck's motion to vacate should be dismissed.

### 3. Evidentiary Hearing

Section 2255 states that "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the

habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 7787, 782 (6th Cir. 1999) (citation omitted). In addition, "the words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. Furthermore, since I suggest that Buck has not alleged any grounds for relief, the motion is one where "the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). I therefore suggest that Buck is not entitled to a hearing on the allegations raised in his motion.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the

objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                    s/ *Charles E Binder*
                                                    CHARLES E. BINDER
Dated: August 20, 2013                               United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: Ruth Ann Buck # 44568-039, Hazelton U.S. Penitentiary, P.O. Box 2000, Bruceton Mills, WV 26525.

Date:  August 20, 2013                     By    s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder